IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REONA WISE,<br><br>                 **Plaintiff,**<br><br>v.<br><br>**LESSIE BATES DAVIS**<br>**NEIGHBORHOOD HOUSE, INC.,**<br><br>                 **Defendant.** | Case No. 3:21-cv-01265-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 90) filed by Defendant, Lessie Bates Davis Neighborhood House, Inc. ("LBD"). For the reason's set forth below, the Court GRANTS the Motion for Summary Judgment.

### PROCEDURAL HISTORY

On October 15, 2021, Reona Wise ("Wise") timely filed her initial complaint[1], then amended said complaint on October 25, 2021 prior to the entry of LBD (Doc. 1, 14). On November 18, 2021, LBD filed a partial motion to dismiss and a partial motion for judgment on the pleadings (Docs. 25, 26). On April 4, 2022, this Court *sua sponte* dismissed the amended complaint for procedural deficiencies and granted Wise leave to file a second amended complaint (Doc. 41).

On June 4, 2022, Wise filed her second amended complaint (Doc. 44). In

---

[1] According to the Notice of Suit Rights dated July 29, 2021, "Your lawsuit **must be filed WITHIN 90 days** of your receipt of this notice; or your right to sue based on this charge will be lost".

response, on June 20, 2022, LBD filed its answer along with a partial motion to dismiss and a partial motion for judgment on the pleadings (Docs. 50-52).

On September 19, 2022, following briefing by the parties, this Court granted in part and denied in part both the partial motion to dismiss and partial motion for judgment on the pleadings (Doc. 72). Specifically, this Court entered judgment as to six of the alleged Counts and held that Wise could only proceed on two of her alleged claims, *to wit:* (1) Count VI – Race Based Discrimination pursuant to 42 U.S.C. §1981; and, (2) Count VIII – Unlawful Retaliation, also pursuant to 42 U.S.C. §1981 (*Id.*). Accordingly, the actions brought pursuant to Title VII – 42 U.S.C. §2000e, *et seq.,* the Equal Pay Act – 29 U.S.C. §206, the Age Discrimination in Employment Act – 29 U.S.C. §§621 *et seq.*, and 42 U.S.C. §1983, were all dismissed.

On February 24, 2023, LBD filed the instant motion for summary judgment along with a statement of facts and excerpts of deposition testimony (Doc. 90). On that same date, LBD also filed a supplement that included twenty-eight exhibits in support of motion for summary judgment (Doc. 91). Within the motion, LBD claims that Wise is entitled to judgment as a matter of law with respect to her claims of discrimination (Doc. 90). LBD also argues that it is entitled to judgment as a matter of law on Wise's retaliation claim (*Id.*). Specifically, LBD asserts that Wise cannot make a *prima facie* showing of either discrimination or retaliation (*Id.*).

On April 5, 2023, Wise filed her response to the motion for summary judgment wherein she counters that she has made a *prima facie* case for both race and color discrimination as well as for retaliation (Doc. 95). In support of her position, Wise

also submitted several exhibits (*Id.*).

On April 19, 2023, LBD filed its reply and claimed that Wise did not contest the facts asserted in the motion for summary judgment nor did she bolster her assertions with evidentiary support (Doc. 96). LBD further points out that Coleman was terminated eight months prior to Wise and that Wise has not shown that any alleged discrimination that occurred during his tenure was imputed to LBD and Interim CEO/President, the Reverend Gary Gaston (*Id.*).

## STATEMENT OF FACTS[2]

LBD is a United Methodist Community Center whose mission is to improve the quality of life for residents of all ages, races, and backgrounds in East St. Louis, Illinois. LBD provides quality early childhood development services, comprehensive youth services, individual and family support services, services to older adults, and housing economic services. The majority of individuals served by LBD are African American. Many of the services provided by LBD are funded through federal and state grants, which also provide funding for the salaries of the employees working under the grants.

Wise was hired by the President and CEO of LBD, Christopher Coleman ("Coleman"), as a Program Coordinator on May 24, 2016. Wise is an African American female with a medium to dark complexion (Doc. 44, ¶ 5). Coleman is also African American.

---

[2] In an effort to mete out immaterial and irrelevant facts, this Court has prepared its own statement of facts based upon the parties' submissions herein, as well as the exhibits attached thereto. This statement only includes facts which would be admissible at trial and which are adequately supported and material to the issues in this case.

In August of 2016, Wise was promoted by Coleman to Vice President of Prevention Initiatives and reported directly to him. Her duties were expanded in the new position and required overseeing various grants. She also received a salary increase in November of 2016. Wise's title later changed to Vice President of Prevention Initiatives and Youth Programs and she began to oversee additional programs. In April 2017, Wise received another salary increase. In July 2017, Wise began to oversee even more programs.

Wise received her first performance evaluation in June 2017, at which time her failure to timely report to her own meetings and her difficulty working with subordinates were noted as marginal (Doc. 95-6). In the summer of 2017, LBD also received numerous reports of dissatisfaction from the employees in Wise's programs who complained she was a bully to staff, played favorites, and threatened staff not to complain about her because it would get back to her. Staff also complained that Wise directed them to perform personal tasks, such as picking up and transporting her children, that Wise mismanaged certain programs, such as TeenREACH, and that Wise denied requisition requests without explanation, which forced them to spend their own money. Staff indicated these issues were unprecedented prior to Wise.

In the fall of 2017, Wise entered into a contract with Creative Consultants to work on a project. Wise planned to use funds from an agreement with ESL School District that had not yet been approved. Wise authorized Creative Consultants to begin the work without having received an approved purchase requisition to ensure LBD would be reimbursed by District 189 for the funds. Coleman was not aware of

this contract until after its execution by Wise and after work had already been performed for the month of September 2017.

In October 2017, Wise was admonished by Coleman and the CFO that they were the only individuals authorized to sign and execute contracts with vendors and lending institutions. Wise was then placed on 45 days paid administrative leave.

During Wise's administrative leave, LBD's HR official, Mishayla Clemmons ("Clemmons"), also an African American female, completed an investigation into the complaints made by Wise's subordinates. Clemmons conducted interviews with twelve (12) different staff members and learned that employees felt Wise exhibited unprofessional conduct and created a hostile work environment.

As a result of these findings, Wise was placed on a Performance Improvement Plan (PIP) upon her return from administrative leave on December 18, 2017. The PIP outlined "Areas of Concern" and "Improvement Goals" and noted that "improvement must occur immediately and must be maintained." (Doc. 91-3).

Although Wise's pay was not reduced, several programs were removed from her supervision. On December 21, 2017, which was three days after the PIP was issued, Wise received her only written warning for tardiness, but it did not result in loss of pay or benefits.

On December 22, 2017, the day after receiving the written warning, Wise filed a Charge of Discrimination with the EEOC and indicated the complaint was for discrimination based on "sex" and "retaliation". The 2017 charge did not reference either "race" or "color". On December 28, 2017, less than a week after the EEOC

claim, Wise filed an internal grievance with Clemmons at LBD. This grievance did not mention race or color.

In late December 2017, Coleman[3] was dismissed by the Board at LBD over suspicion of embezzlement and misappropriation of agency funds, and in January 2018, the Reverend Gary Gaston ("Gaston") became interim President and CEO of LBD. Gaston is African American and is the pastor at St. Paul Baptist Church, which is a predominantly African American congregation.

On January 11, 2018[4], Gaston vacated Wise's PIP and reinstated her to all the programs she previously oversaw. Wise's statement of facts does not go beyond this date, other than to state she was terminated in August of 2018 (Doc. 95, pp. 2-6).

In the first half of 2018, LBD faced a significant budget crisis and faced threats of discontinuation of several grants and grant monies. Coleman's issues also caused increased scrutiny on LBD's use of grant monies and raised questions about the future of LBD. Due to these issues, Gaston required all programs operate in strict compliance with LBD's policies and program requirements, including that VPs still needed the approval of the President/CEO to enter into contracts on behalf of LBD.

On May 17, 2018, Wise, without any consultation with Gaston or his pre-approval, signed a "Pre-Award Checklist" with the St. Clair County Intergovernmental Grants Department for On-the Job ("OJT") Training that

---

[3] On June 4, 2019, Christopher Coleman was indicted by the grand jury with one count of Embezzlement from the Lessie Bates Neighborhood House, an Organization that Received Federal Funds in violation of 18 U.S.C. §666(a)(1)(A). See *USA v. Coleman,* 3:19-cr-30080-SMY (S.D. IL). On August 15, 2019, Coleman entered a guilty plea and was ultimately sentenced to 18 months incarceration to be followed by two (2) years of supervised release.

[4] The PIP was in effect from December 18, 2017 – January 11, 2018 (24 days).

committed LBD to long-term employment and benefits (Doc. 91-20). On June 18, 2018, Wise, again without any consultation with Gaston or his pre-approval, executed a Memorandum of Understanding ("MOU") with the LUME institute that obligated LBD to employ apprentices and pay them (Doc. 91-21).

LBD became aware of the OJT and MOU in July 2018, and Gaston sent Wise a letter on July 19, 2018 requesting an explanation for her execution without prior approval and seeking answers to four specific questions. Wise did not address the questions and claimed that LBD had discussed the OJT and MOU in 2017, and that the contracts had both forwarded to HR for approval. Wise also advised that the Lume/MOU could be canceled with a 30-day notice and that Intergovernmental Grants reissued the OJT for the appropriate signatures.

Wise was VP over the Early Childhood Programs at LBD's Family Development Center. In June of 2018, LBD became aware that Wise's son was working at the Family Development Center. On June 19, 2018, Clemmons wrote Wise a letter to "gain[ing] knowledge and clarification of why your son is working at the Family Development Center." (Doc. 91-7). In response, Wise filed a formal grievance with LBD claiming that the inquiry was a "direct attack" by Gaston, who acted with "malicious intent" and created a "hostile work environment" (Doc. 95-5). The grievance advised that her son was working at the Family Development Center through District 189's AmeriCorp program as a volunteer placed at the Early Childhood Center and that he was "used throughout the programs and center in various roles as needed" (Id.). The grievance did not mention race or color in any

manner.

Following an investigation, the Personnel Committee of the Board at LBD concluded that Gaston's inquiry was appropriate and agreed that Wise's son should not volunteer in a program she supervised. Wise was not disciplined or suspended following the investigation, nor were her pay or benefits reduced. The Chair of the Personnel Committee was Robbie Edmond, an African American.

On July 26, 2018, the Director of Strategic Partnerships of 189 terminated its long-running Host Site Partnership Agreement with LBD (Doc. 91-10). The letter specifically referred to the Mary Brown Center and/or Family Development Center and claims members may have been used for non-allowable program activities including caring for children 0-3 years of age and filling in for the receptionist[5].

The Board of Directors at LBD is responsible for approving the fiscal budget. The Board determined that no staff raises would be given in 2018 beyond what was mandated by the grants themselves. Wise's raise was $405.89. In late June and early July 2018, Wise proposed a budget for her programs that would have increased her salary by $30,000 - $40,000 per year. Wise also proposed raises for her staff and told them they would be getting a raise. Wise submitted Payroll Change Notices directly to the LBD Payroll Department before approval.

The president of the Board, Earl McDowell, notified staff that the raises

---

[5] During her deposition of 11/22/2022, Wise indicated her son was an AmeriCorp volunteer through ESL 189 and was assigned to the Migrant Head Start where he worked with toddlers (aged 2-3) to third grade (Doc. 90-2, pp. 180- 181). She also testified that her son also completed assignments throughout the center, such as supporting on the phone and helping with preparing on of the classrooms (*Id.,* pp. 186-187).

promised by Wise had not been approved. Wise had been advised by Gaston that she was not authorized to submit the Notices and that the Board had not yet finalized the 2019 Fiscal Year Budget.

On August 17, 2018, LBD terminated Wise's employment (Doc. 91-15).

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, no issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633 (7th Cir. 2008).

The nonmovant cannot simply rely on its pleadings; the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993)). Furthermore, the mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead the nonmovant must present definite, competent evidence in rebuttal. *Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).*

The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and in opposition to the motion for summary judgment. *White v. City of Chicago,* 829 F.3d 837, 841 (7th Cir. 2016). In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could not persuade a reasonable jury that the employer had discriminated against the plaintiff. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir. 1989).

## ANALYSIS

In the Motion for Summary Judgment, LBD asserts that Wise's termination is the only actionable employment decision in this case (Doc. 90). However, LBD further asserts that Wise has not made a *prima facie* of race discrimination or retaliation (*Id.*). Moreover, LBD argues it had a legitimate, non-discriminatory basis for terminating Wise, and assuming Wise meets her burden, she cannot show that said

reason for her termination was pretextual (*Id.*).

## I.    Count IV: Race Based Discrimination, 42 U.S.C. §1981

### A. Applicable Law

Section 1981 provides in pertinent part that "[a]ll persons...shall have the same right in every State and Territory to make and enforce contracts...as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

The Seventh Circuit has determined that the legal analysis for discrimination claims under Title VII and Section 1981 is identical. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). Indeed, *all* discrimination cases present the same basic legal inquiry, and at the summary judgment stage, the proper question to ask is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016) (*emphasis added*).

One way of proving employment discrimination is the familiar *McDonnell Douglas* burden-shifting framework[6]. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under this analysis, to establish a prima facie case of

---

[6] This burden shifting framework was formerly known as the "indirect" method; however, the Seventh Circuit held that district courts must stop separating "direct" from "indirect" evidence and proceeding as if they were subject to different legal standards. *Ortiz,* 834 F.3d 760, 765-766. Instead, all evidence belongs in a single pile and must be evaluated as a whole. *Id.*

employment discrimination, the employee must show that "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Mintz v. Caterpillar Inc.,* 788 F.3d 673, 680 (7th Cir. 2015). If an employee meets each element of her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the employee to show why the employer's explanation is pretextual. *Id.*

### B. Discussion

Wise argues that she has made a *prima facie* claim for race and color discrimination; therefore, this Court must go through the steps to determine if she has done so (*See* Doc. 95). As set *forth* infra, Wise must show that she belongs to a protected class; she met all legitimate expectations of her job; she suffered an adverse employment action; and, another employee who was not in protected class was treated more favorable.

### 1. Protected Class

The first prong is generally clear in most cases, as here. Wise can clearly demonstrate the first element - she is African American. Section 1981 applies to allegations of discrimination based on race. 42 U.S.C. § 1981(a); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

### 2. Met Expectations

Regarding the second element, Wise cannot show that she was meeting LBD's legitimate expectations. In October 2017, she was suspended for a period of 45 days after executing a contract with Creative Consultants without the prior approval of the President/CEO or CFO. Upon her return on December 18, 2017, Wise was placed on a Performance Improvement Plan ("PIP") by Christopher Coleman, the former CEO and President of LBD who was also African American. The PIP identified the following four main areas of concern: (1) Lack of understanding of the role and authority of the VP of Prevention Initiative Programs – 5 subparagraphs; (2) Failure to follow directives of President/CEO and failure to effectively communicate with President/CEO – 4 subparagraphs; (3) Management style – 6 subparagraphs; and, Tardiness to meetings (Doc. 91-3). The PIP also provided Improvement Goals, Specific Expectations; and Follow-up Updates (*Id.*). Although the first update was scheduled for January 18, 2018, Gaston became Interim CEO/President in January 2018 and he vacated Wise's PIP on January 11, 2018 (Doc. 91-1).

Notwithstanding the foregoing, Wise points to her mostly positive first performance review from June 2017 (Doc. 95-6). It is important to note; however, that this review occurred before the issues surrounding the contract with Creative Consultants. Accordingly, this Court does not find that Wise was meeting LBD's legitimate expectations.

### 3. Adverse Employment Action

To proceed with a race discrimination, Wise must also show that she suffered a "materially adverse employment action." *Dass v. Chi. Bd. of Educ.,* 675 F.3d 1060, 1068–69 & n. 9 (7th Cir.2012). An adverse employment action is "some quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment that is more than a mere subjective preference." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "Such changes can involve the [plaintiff's] current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Boss*, 816 F.3d at 917. However, "not everything that makes an employee unhappy is an actionable adverse action." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)).

Wise also points to a 2017 write-up for tardiness, which was later vacated, as well as statements made by Coleman calling her an "angry, aggressive black woman" and insinuating that she did not need any more babies in support her allegations of racism. This Court finds those arguments unpersuasive. Indeed, some people thinking an action is "humiliating" is not enough, on its own, to raise the action to the level of an adverse employment action. *Madlock v. WEC Energy Group, Inc.,* 885 F.3d 465, 471 (7th Cir. 2018). An opinion is not enough. Whether an action is adverse requires an amount of objectivity, "[o]therwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a

discrimination suit." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

The Seventh Circuit has classified materially adverse employment action into the following three categories:

> "(1) Cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated;
>
> (2) Cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced; and,
>
> (3) Cases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the conditions in which he works are changed in a way that subjects him to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment—an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet.

*Tart v. Ill. Power Co.,* 366 F.3d 461, 475 (7th Cir.2004).

In this case, Wise ultimately lost her job, which is a materially adverse employment action; however, prior to that and during the time within which she complained, her salary, compensation and benefits remained the same. Additionally, Wise's title changed and she temporarily lost several agencies, but gained all but back. Assuming arguendo she has satisfied this condition does not automatically overcome her inability to satisfy the second prong and establish a *prima facie* case.

**4. Similarly Situated Employee Treated More Favorably**

As for the fourth and final element, it is the Wise's burden to present

admissible evidence of a specific employee outside her protected class – African American – who was treated more favorably, *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003), and that employee must be "directly comparable to h[er] in all material respects." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications--provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 532 (7th Cir. 2003).

Wise has not and cannot prove that another similarly situated employee was treated more favorably than she. Her immediate supervisor, Gaston, the Interim CEO and President, was African American, as were her three fellow Vice Presidents. Although she claimed she and the other female VP were underpaid while the male VPs were overpaid, she does not provide any support for these allegations. She does not know how much anyone else made. Moreover, she does not assert a claim for sexual discrimination, so it is irrelevant IF her male counterparts made more, which we do not even know. Her assertions that the males were treated better than the females are not dispositive, they are just her unsubstantiated complaints.

Although Wise then attempts to make a case for discrimination within the same race, she does not provide any evidentiary support for her contention. While her

complaint asserts racial and color discrimination as her "complexion is medium to dark[7]", she could not specify whether Coleman, Gaston, Clemons, or the three other VPs were lighter or darker complected. In fact, plaintiff was rather confusing in her deposition responses. For example, she had a hard time affirming the race of another, much less the skin tone.

During her deposition, she specifically stated,

> "You keep asking me do I know they were African American. And what I am saying is they appear to be African American, but I cannot validate that they are African American." (Doc. 90-2, p.11).

She also affirmed she was discriminated against based on the color of her skin, but when asked about others stated,

> "When I look at people, I don't look at whether or not they're darker than me or not. That's the kind of person I am. A lot of other people, people often do that. They see people and that's what they see, they see the different shades and they're treated differently because of that. They are communicated differently because of those shades. I don't see that. I can't answer that question because when I look at people, I don't see whether or not their shade is darker or lighter than mine." (Doc. 20-2, p. 13).

If Wise cannot identify the color of an individual, how can she determine she was discriminated against for her complexion? Indeed, her spurious claims result in nonsense.

Because Wise cannot make a *prima facie* case, there is no burden switching. However, were this matter to survive the first stage, it would still fail as there was a legitimate non-pretextual reason for the termination – Wise executed two contracts without the approval of the President and CEO. She had previously been disciplined

---

[7] Doc. 44, ¶ 15.

for this same conduct, yet she did not learn from the prior mistake in 2017 and repeated this behavior, placing LBD in a precarious situation. The termination letter also references ESL 189 withdrawing its AmeriCorps program from LBD, and Wise's son was in that program participating in some of the non-allowable program activities at a site that was under her supervision.

Accordingly, summary judgment is appropriate as to race and color discrimination.

## II. Count VIII: Unlawful Retaliation, 42 U.S.C. §1981

In contrast to claims of discrimination, "[i]n the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). Rather, to survive summary judgment on her retaliation claims, Wise must show evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Abebe v. Health and Hospital Corporation of Marion County,* 35 F.4th 601, 607 (7th Cir. 2022). For purposes of retaliation, an adverse employment action is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

In this case, there is no question that termination is an adverse employment action. However, the inquiry does not end there. Wise also engaged in statutorily protected conduct in filing claims with the EEOC and grievances at LBD. Accordingly, whether she can establish a *prima facie* showing of retaliation must

focus on whether the two actions – the termination and the complaints – are causally connected.

Wise's first charge of discrimination with the EEOC was dated December 22, 2017 and her grievance letter to Mishayla Clemons was dated December 28, 2017, both of which occurred after the enactment of her Performance Improvement Plan of 12/17/2017 so there is no support that LBD enacted the PIP in retaliation of her complaint(s). Additionally, the PIP was vacated 24 days after its enactment so Wise never had to actually fulfull the conditions of the PIP; therefore, it is not considered an adverse employment action. See *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011); *see also Abebe,* 35 F.4th 601, 607-608.

The PIP is an important factor though in determining whether there was retaliation in this case or whether LBD had a legitimate non-pretextual reason for terminating Wise's employment. Wise was terminated on August 17, 2018, more than eight months after her first claim of discrimination. The termination letter provided numerous grounds in support of said termination, including but not limited to multiple complaints from subordinates and entering into a contractual relationship without prior approval of the CEO/President. The termination letter also acknowledged the prior PIP that was executed on December 18, 2017 wherein she was specifically directed to "obtain written approval of the President/CEO before committing or agreeing (whether verbally or in writing) to any services or other financial obligations on behalf of Lessie Bates Davis Neighborhood House."

Notwithstanding the directive in the PIP, Wise entered into not one, but two

contracts on behalf of LBD without the prior approval of the President/CEO. These contracts were executed on May 17, 2018 and June 7, 2018, respectively, which was less than six months after the implementation of the PIP. Her conduct was in direct violation, and some would say in flagrant disregard, of the PIP.

Wise's second charge to the EEOC was made on July 26, 2019 at which time she complains about her termination of August 18, 2018 being without cause and claims none of her male or white co-workers would have been terminated. Her claims are unsupported and without merit. As such, LBD is also entitled to summary judgment on Wise's claim of retaliation based upon her termination in August 2018.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant, Lessie Bates Davis Neighborhood House. Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact concerning either her race and/or color discrimination claim or her retaliation claim. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly. As such, all pending court dates are cancelled and vacated and all pending motions are terminated as moot.

**IT IS SO ORDERED.**

**DATED: May 19, 2023**

<u>/s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**